UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                               Case No. 1:03:CR:203-06

MARCUS LOFTON,                        HON. GORDON J. QUIST

      Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, Marcus Lofton, was convicted of cocaine dealing conspiracy and originally sentenced to 240 months incarceration plus five years of supervised release. The prison portion of this sentence was reduced to 192 months incarceration pursuant to Amendment 782 of the Sentencing Guidelines. Mr. Lofton has served his period of incarceration, but on April 17, 2018, Mr. Lofton was sentenced to 10 months incarceration plus 30 months supervised release for violating a term of his supervised release by leaving the judicial district without informing his supervising probation officer.

On April , 2019, Mr. Lofton appeared before the Court again to face charges that he violated terms and conditions of his supervised release as follows:

- Violations 1 and 2 - Violation of RRC Rules
- Violation 3 - Commission of a Crime - Possession of Cocaine
- Violation 4 - Use of Cocaine

Mr. Lofton pled guilty to alleged violations 1 and 2, but pled not guilty to alleged violations 3 and 4. An evidentiary hearing was held in which the Court heard testimony of witnesses and Mr.

Lofton and saw photos of relevant material. In support of charges 3 and 4, the Probation Office presented evidence of how the half-way house to which Mr. Lofton was confined performed urine tests on residents of the house; presented evidence of the chain of custody for Mr. Lofton's urine sample, and presented evidence that Alere Toxicology Services, Inc. tested Mr. Lofton's urine sample which showed 125 nano-grams of cocaine metabolite in Mr. Lofton's specimen. Alere uses a cut-off of 100 nano-grams before it finds a test to be positive for cocaine use.

Mr. Lofton testified in his own defense. He claimed that he has never used cocaine, and he claimed that the specimen bottles shown in photographs introduced into evidence were not related to him because these bottles did not have an identifying red ribbon.

The issue in the case regarding whether Mr. Lofton is guilty of charges 3 and 4 boils down to whether the specimen utilized by Alere Toxicology in making its tests was the same specimen provided by Mr. Lofton at the half-way house. Mr. Lofton does not contest that the specimen tested by Alere showed 125 nano-grams of cocaine metabolite. The Court finds, by a preponderance of the evidence, that the specimen tested by Alere was Mr. Lofton's specimen. The Court finds that the testimony of Jiech Jagah, an employee of the half-way house, was credible as to how he observed Mr. Lofton provide the specimen, how he marked the specimen, and how he put the specimen into a bag to be sent to Alere Laboratories. Probation Officer Fett's testimony was credible as to how a particular specimen is numbered on the specimen bottle, inspected, marked, and sent to Alere Laboratory as part of the usual course of business for the Probation Office.

Patricia Pizzo, Director of Toxicology of Alere Toxicology Services, testified as to how the specimen is opened and used and how the specimen is linked by bar codes. The specimens are received by Alere; the baggie containing the specimen is received in the laboratory to make sure that the seals are intact. The baggie is then opened; the chain of custody document and urine container

are then removed from the baggie. The seal of the urine container is then inspected to make sure that all information on the seal matches the information on the chain of custody document. If there is a match, the sample is placed into a batch and given a laboratory number, a session number so that the sample can be traced in the laboratory. The first portion of the sample is tested to determine a "range finding," a determination of whether and how much cocaine (or other drug) metabolite, if any, is in the subject's system at the time the sample was provided. Then, a second portion of the sample is removed from the sample and sent to a confirmation laboratory for it to determine the approximate amount of drug in the sample - using a liquid chromatography gas mass spectroscopy or mass spectroscopy a/k/a LCMSMS. Then the results of these tests are reviewed by the "certifying scientist" who puts the data into the laboratory computer to be provided to the client, in this case the Court's Probation Office. Ms. Rizzo testified that the sample was received sealed and the seals were intact. If it was not sealed or the seals were not intact, the sample would have been rejected.

Following this information and procedure, Ms. Rizzo determined that the sample contained the presence of benzoylegonine, a urinary metabolite for cocaine. A metabolite is generated by the ordinary breakdown of the primary drug for which the test is given. The breakdown of Mr. Lofton's presumed test by Alere resulted in 125 nano-grams per milliliter, which is only 25 grams over the 100 nono-gram base for Alere's determination that a test was positive for the presence of cocaine in the subjects system.

Therefore, Mr. Lofton is adjudicated guilty of violations 3 and 4.

Dated:  May 8, 2019                                                   /s/ Gordon J. Quist
                                                                                        GORDON J. QUIST
                                                                       UNITED STATES DISTRICT JUDGE